IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

PRISCILLA ANN FLOTTMAN )
) No. 3-09-0770
v. )
)
HICKMAN COUNTY, TENNESSEE; )
THE CITY OF CENTERVILLE, )
TENNESSEE; and KENNY SMITH )

TO:   Chief Judge Todd J. Campbell


REPORT  AND  RECOMMENDATION

By order entered July 13, 2010 (Docket Entry No. 65), the motion of defendant Hickman County for sanctions (Docket Entry No. 50) was referred to the Magistrate Judge for a report and recommendation.


I.  Motion for Sanctions and Response

Defendant Hickman County, Tennessee ("defendant") seeks sanctions against the plaintiff for "failing to preserve and intentionally destroying evidence uniquely relevant" to the defendant's defense.  Docket Entry No. 50, at 1.  Specifically, the defendant contends that the plaintiff failed to preserve and produce journals that she testified she wrote while incarcerated at the Hickman County Jail ("the Jail").  According to the plaintiff's deposition testimony, those journals detailed the physical and sexual assaults by defendant Kenny Smith while the plaintiff was housed in the Jail, including the specific dates of those assaults.  Docket Entry No. 48, at 44-46.  The defendant maintains that the plaintiff was on notice of her obligation to safeguard and produce those journals, that she failed to preserve and intentionally destroyed them, and that she lied under oath at her deposition about her efforts to safeguard and produce the journals.  The defendant seeks dismissal

of the plaintiff's claims or, in the alternative, an adverse inference or presumption that the evidence would have been favorable to the defendant's defenses, and an award of attorney fees.

In her response (Docket Entry No. 64), the plaintiff contends that the journal entries were destroyed by the "unprecedented, '100-year' flooding" during the weekend of May 1, 2010, and that the journals, stored at her mother's home, were destroyed by her mother's landlord before she had an opportunity to retrieve them and that she "threw away" a page or pages of the journal that had not been previously destroyed because they were rendered "illegible and smeared by the water" as a result of the Nashville flood. Docket Entry No. 64, at 2-3. The plaintiff argues that she did not dispose of the illegible page or pages of her journal in bad faith or with any fraudulent intent since she was "uninformed about the necessity to produce documents that were water logged, smeared and illegible." Id. at 3. The plaintiff maintains that, if the Court finds that sanctions are appropriate, such sanctions should be "imposed in the form of a Motion in Limine" at the trial preventing the plaintiff from testifying about the journal entries themselves. Id.

## II. Plaintiff's Deposition Testimony

The plaintiff was first deposed on April 23, 2010, at which time she testified that she kept a daily journal of every date on which defendant Smith sexually abused her, and that the journal was located at her mother's home.[1] Docket Entry No. 48, at 44-46. The deposition was adjourned for the plaintiff to produce the journals prior to a rescheduled deposition on May 4, 2010. Id. at 49. However, because the plaintiff had gone into labor, the May 4, 2010, deposition was cancelled, and defendant Smith noticed the rescheduled deposition for May 14, 2010, prior to which time plaintiff's counsel advised that they had scheduling conflicts and the plaintiff could not appear because she was recovering from having given birth. Id. at 53-54.

---

[1] The plaintiff had not disclosed these journals in her initial disclosures pursuant to Rule 26(a)(1) of the Federal Rules of Civil Procedure.

The plaintiff then filed a motion to continue the discovery deadline, citing the "newly discovered information/evidence" of her journals, the birth of her child, and the Nashville flood that caused her lead counsel to be out of his office until May 10, 2010, resulting in her inability and the inability of her counsel to appear on May 14, 2010, for a rescheduled deposition. See Docket Entry No. 37. All defendants opposed the plaintiff's motion. By order entered May 19, 2010 (Docket Entry No. 39), a telephone conference call with the Court was scheduled on May 24, 2010, at which time, as reflected in the order entered May 27, 2010 (Docket Entry No. 42), the plaintiff's motion to continue deadlines was granted to the extent that the Court permitted the plaintiff to depose defendant Smith, ordered that the plaintiff's continued deposition be conducted on June 9, 2010, ordered that the plaintiff serve responses to outstanding written discovery, including copies of her journals that she located in her initial search,[2] by May 28, 2010, and ordered that the plaintiff make a diligent search to locate "all additional pages of her journals" and provide them to defendants prior to June 9, 2010.

During her deposition on June 9, 2010, the plaintiff testified that her journals had been destroyed in the flood during the weekend of May 1, 2010. Docket Entry No. 49, at 7. Specifically, she explained that her mother's landlord had "cleaned the shed" in which the journals were stored. Id. at 9-10. Later during the deposition, she testified that she had gone to her mother's home to locate the journals before the flood, but had not thought to look in the shed. Id. at 65. However, she also testified that, although the landlord had thrown away "half everything that he pulled out" of the shed, she was able to locate a folder containing one page of her journal. Id. at 66. However, the plaintiff explained that the contents of the folder were "soaking wet," the "ink was smudged," and "[t]here was no reading to them." Id. at 67. As a result, she "threw them away because you couldn't read them." Id. It was not clear from her testimony whether she was able to locate one page or

---

[2] Plaintiff's counsel explained during the May 24, 2010, conference call that the plaintiff had gone to her mother's home and retrieved one document, which had not yet been provided to the defendants, but that counsel believed that additional portions of her journal either no longer existed, had been misplaced, or could not be found.

3

multiple pages of her journal. By her use of the plural "them," it might be inferred that she was referring to more than one page. However, she described destroying only one page. She also testified that she located the one damaged page of the journal before May 2, 2010, when she went into labor, so it appeared that she narrowed the time frame down to the Friday or Saturday of the flood. Id. at 68-69.

Later in her deposition, the plaintiff testified that she did not remember that last time she went to her mother's home before she had her baby, and that on April 27, 2010, she had been placed on house arrest and could only go to her lawyer's office, to court, the hospital, her probation officer, and to depositions. Id. at 100-103. However, she testified that she stayed with her mother after her delivery, and that her probation officer allowed her to "swing by and say hi" to her mother on her way home. Id. at 205-206. After further questioning, the plaintiff testified that she did not know whether she looked for the journals at her mother's home before or after she had her baby. Id. at 210.

III. Discussion

The parties agree that the standard for determining whether sanctions should be imposed in this case is set out in the case of Clark Constr. Group v. City of Memphis, 229 F.R.D. 131 (W.D. Tenn. 2005). Clark correctly relied on state law as mandated by Beck v. Haik, 377 F.3d 624, 641 (6th Cir. 2004), and prior Sixth Circuit cases. However, in Adkins v. Wolever, 554 F.3d 650 (6th Cir. 2009), the Sixth Circuit expressly overruled Beck and its predecessors, and held that the federal court's inherent powers to "control the judicial process" and federal evidentiary rules permit it to impose proper sanctions for spoliation without regard to state law. Id. at 651. To a large extent, however, Clark sets out the applicable law under both state and federal standards.

A proper spoliation sanction serves both fairness and punitive functions. R.C. Olmstead, Inc. v. CU Interface, LLC, 606 F.3d 262, 273 (6th Cir. 2010); Adkins, 554 F.3d at 652. The degree of culpability for failure to produce relevant evidence ranges from "innocence through the degrees of

4

negligence to intentionality," and thus any sanction, including dismissal or imposition of an adverse inference, must take into account the party's fault. Adkins, 554 F.3d at 652-53.

The threshold inquiry is whether and when the plaintiff had a duty to preserve and produce the journals she testified she had written while incarcerated at the Jail. It is not disputed that she had such a duty. The defendant--perhaps generously--gives the plaintiff the "benefit of the doubt" that she was on notice as early as April 23, 2010, the date of her first deposition, when she first disclosed that she had written "journals" and agreed to provide them. As the defendant points out, the plaintiff acknowledged the time urgency after defendant's counsel advised the plaintiff "the sooner you can" produce the journals, "the better." Docket Entry No. 48, at 49. The Court also ordered that the journals be produced prior to June 9, 2010. See Docket Entry No. 42.

While the plaintiff clearly did not take immediate action to retrieve the journals after the April 23, 2010, deposition, the Court acknowledges that the unique circumstances of her impending childbirth may understandably have diverted her attention. The defendant emphasizes the plaintiff's changing story in her deposition on June 9, 2010. It is not clear from her testimony whether the plaintiff attempted to retrieve the journals before she gave birth or after she gave birth or even if her mother brought her the journals. Her deposition testimony is, at best, internally inconsistent. Although the defendant has cited portions of the plaintiff's deposition that support its contention that the plaintiff lacks credibility, the defendant does not, however, appear to challenge the plaintiff's testimony that she "threw away" the portions of her journal that she unilaterally determined were illegible as a result of water damage from the flood. The plaintiff conceded that she did not consult her attorneys before she disposed of the journals and argued that her "actions were not done in bad faith or with any fraudulent intent." Docket Entry No. 64, at 3.

Dismissal is a drastic remedy and is warranted only when a party's conduct constitutes "flagrant bad faith." Clark, 229 F.R.D. at 138. In Clark, a representative of the defendant's authorized agent had intentionally shredded documents related to the plaintiff's discovery requests, apparently believing that they were not relevant. The Court found that the defendant's actions were

not willful and did not rise to the level required for dismissal (presumably of the counterclaim). Although the defendant appears to argue that the plaintiff's attempts to "cover up" her actions or inactions in regard to any attempt to retrieve the journals provide support for dismissal of her claims, the bottom line remains that the plaintiff admitted that she destroyed at least one page of the journals because they/it had been ruined in the flood. While much of her testimony was inconsistent, she did not waver on that issue, nor does the defendant suggest that the plaintiff did not, in fact, destroy the journal after the flood.

The Court cannot find that the plaintiff's misguided action in destroying the illegible portions of her journal justifies a sanction of dismissal of her claims.

On the other hand, the Court finds that her conduct does justify the imposition of an adverse inference in favor of defendant Hickman County.

An adverse inference for evidence spoliation is appropriate if the plaintiff knew the evidence was relevant and her culpable conduct resulted in its loss or destruction. Beaven v. United States Dep't of Justice, __ F.3d __, 2010 WL 3730909 (6th Cir. Sept. 27, 2010). While Clark cited Tucker v. General Motors Corp., 1991 WL 193458, *2 (6th Cir. Sept. 30, 1991), for the proposition that a negative inference should "generally not be allowed absent bad faith" (emphasis in original), it relied on state law in determining that "bad faith and an intentional and wrongful act are not prerequisites for imposing an adverse inference sanction." Clark, 229 F.R.D. at 140. Although reliance on state court is no longer appropriate after Adkins, supra, Sixth Circuit cases after Tucker have found that the district court has broad discretion to craft sanctions for spoliation, depending upon a party's "degree of fault." Adkins, 554 F.3d at 653. Thus, a party acts with a "culpable state of mind" when she destroys evidence "knowingly, even if without intent to [breach a duty to preserve it] or negligently." Beaven, 2010 WL 3730909, at *14 (internal citation omitted) (emphasis in original).

The plaintiff was on notice that she had a duty to preserve and retrieve her journal entries. The plaintiff did not take immediate steps after the April 23, 2010, deposition. It is not clear when the plaintiff first attempted to locate the journals prior to June 9, 2010, and her deposition testimony,

6

at a minimum, lacked clarity on what steps she took and when. What is clear, however, is that the plaintiff destroyed the page or pages of her journals that she could locate without conferring with her counsel or otherwise providing notice to the defendant. By so doing, she effectively precluded the defendant from examining the destroyed journal to confirm that the document was illegible. That conduct was both intentional and negligent. Since the plaintiff testified that she noted in her journal when she had been assaulted, her journal was clearly relevant to the defendant's defenses. Under these circumstances, the Court finds that the defendant is entitled to an adverse inference that the plaintiff was not assaulted from August 21, 2008, until her release from the Jail.

The defendant also seeks an award of attorney's fees for having to file the instant motion. Relying on <u>Clark,</u> the defendant maintains that the plaintiff acted in "bad faith, vexatiously, wantonly, or for oppressive reasons," 229 F.R.D. at 142. Just as the Court could not find that a sanction of dismissal was warranted, so too the Court cannot find that the plaintiff's conduct rises to the level required to award attorney's fees. In <u>Clark,</u> the conduct at issue was shredding relevant documents, which the Court found caused the plaintiff to spend "countless hours preparing memoranda for the Court and researching the true substance of the shredded documents." <u>Id.</u> While "throwing away" an illegible document or documents damaged by flooding may tread close to the same line, the plaintiff's conduct was not so vexatious or wanton to mandate imposition of fees. As addressed above, the plaintiff's deposition testimony about when and how she attempted to retrieve the documents was inconsistent and may lack credibility, but she was consistent in her testimony that, whether before or after she gave birth, she "threw away" the document(s) because it/they had been rendered illegible as a result of the flood. Under these circumstances, the Court finds that the further sanction of an award of attorney's fees is not appropriate.

## IV. Recommendation

For the above-stated reasons, it is recommended that the motion of defendant Hickman County, Tennessee for "Sanctions Against Plaintiff Arising From Spoilation (sic) of Evidence"

(Docket Entry No. 50) be GRANTED in part and DENIED in part. Specifically, it is recommended that: (1) the portion of the defendant's motion seeking dismissal of the plaintiff's claims be DENIED; (2) the portion of the motion seeking imposition of attorney's fees be DENIED; (3) the portion of the motion seeking an adverse inference be GRANTED; and (4) the jury be instructed that the plaintiff's failure to preserve and locate her journals raises a rebuttable adverse inference that she was not assaulted form August 21, 2008, through the date of her release from the Hickman County Jail.

Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of receipt of this notice, and must state with particularity the specific portions of this Report & Recommendation to which objection is made. Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's order. See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

Respectfully Submitted,

JULIET GRIFFIN
United States Magistrate Judge

8