IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

PRISCILLA ANN FLOTTMAN )
) No. 3-09-0770
v. )
)
HICKMAN COUNTY, TENNESSEE; )
THE CITY OF CENTERVILLE, )
TENNESSEE; and KENNY SMITH )

TO: Chief Judge Todd J. Campbell

REPORT AND RECOMMENDATION

By order entered July 14, 2010 (Docket Entry No. 66), the motion of defendant Hickman County for summary judgment (Docket Entry No. 55) was referred to the Magistrate Judge for Report and Recommendation.

I. BACKGROUND

The plaintiff filed this action against defendants Hickman County and Kenny Smith on August 21, 2009, pursuant to 42 U.S.C. § 1983, alleging violations of the Eighth and Fourteenth Amendments to the United States Constitution. Specifically, the plaintiff asserted in her initial complaint that, while she was incarcerated at the Hickman County Jail from January 17, 2008, to August 26, 2008, defendant Smith, a detective employed by the Hickman County Sheriff's Office, violently and repeatedly raped and/or sexually assaulted her, that defendant Hickman County deprived her of physical and psychological medical attention that she had requested as a result of her injuries, and that, upon her release on or about August 26, 2008,[1] through December of 2008, defendant Smith continued to oppress and harass her by "various threats and communications." Docket Entry No. 1, at 2, ¶ 3.5.

---

[1] It appears that the plaintiff was actually released on August 27, 2008. Docket Entry No. 69, at 2, ¶ 4; Docket Entry No. 49, at 12.

On October 2, 2010, the plaintiff filed an amended complaint (Docket Entry No. 8), adding the City of Centerville as a defendant and asserting that defendant Smith was not only a Hickman County detective but also a City of Centerville police officer, that Hickman County had a policy, custom and usage of failing to supervise its deputies in their interaction with female prisoners, failing to maintain and ensure a safe jail environment, and failing to provide medical treatment for the serious medical needs of prisoners, and that City of Centerville had a policy, custom and usage of failing to supervise its officers and to identify those officers with defendant Smith's personality traits and to intercede to treat and correct those problems. The plaintiff also alleged that defendant Smith had continued to oppress and harass her after she was released by "various physical and mental threats and communications." Docket Entry No. 8, at 3, ¶ 3.5.

On November 4, 2009, the plaintiff filed a second amended complaint (Docket Entry No. 17) to "clarify" her allegations and "further identify" the defendants. Docket Entry No. 15. Specifically, the plaintiff asserted in her second amended complaint that defendant Hickman County had a policy of failing to identify deputies with defendant Smith's personality traits and to intercede to treat and correct those problems.

By order entered April 12, 2010 (Docket Entry No. 35), the motion of defendant Hickman County to dismiss (Docket Entry No. 26) was granted in part and denied in part, and the plaintiff's claims against Hickman County arising before August 21, 2008, her claim for punitive damages, and her claims under the Fourteenth Amendment for post-release threats by defendant Smith were dismissed. Specifically, the Court noted that the plaintiff conceded that her claims against Hickman County prior to August 21, 2008, were barred by the one-year statute of limitations, and that the Fourteenth Amendment claims against Hickman County for post-release threats and for punitive damages should be dismissed. See Docket Entry No. 34. The motion to dismiss was denied to the extent that defendant Hickman County sought to dismiss the plaintiff's Eighth Amendment and Fourteenth Amendment substantive due process claims for failure to supervise, failure to train, and failure to maintain and ensure a safe environment at the jail. Defendant Hickman County did not

seek to dismiss the plaintiff's claims for its alleged failure to provide medical treatment for her serious medical needs.

By order entered November 3, 2010 (Docket Entry No. 80), the Court adopted the Report and Recommendation entered October 14, 2010 (Docket Entry No. 78), granted in part and denied in part the motion of defendant City of Centerville to dismiss (Docket Entry No. 44), and dismissed the plaintiff's claims for punitive damages against the City of Centerville, and the plaintiff's claims for conduct occurring prior to August 21, 2008, but denied the motion to dismiss as to the plaintiff's claims for conduct occurring between August 21, 2008, and her release from jail, and her post-release claims. By the November 3, 2010, order, the Court also adopted in part and rejected in part the Report and Recommendation entered October 18, 2010 (Docket Entry No. 79), and found that defendant Hickman County should be entitled to an adverse inference as a result of the plaintiff's spoliation of evidence, but that the adverse inference should not be that she was not assaulted from August 21, 2008, until her release from jail, but rather that the journals at issue, had they been produced, would have been adverse to the plaintiff and favorable to defendant Hickman County.

Defendant Hickman County seeks summary judgment on the plaintiff's claims on the grounds that her sexual assault claims are barred by the statute of limitations and that the defendant was not deliberately indifferent in its training or supervision of defendant Smith in maintaining a safe environment for the plaintiff, or to the plaintiff's serious medical needs.[2]

## II. STANDARD OF REVIEW

Rule 56(c)(2) of the Federal Rules of Civil Procedure provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled

---

[2] Defendant City of Centerville also filed a motion for summary judgment (Docket Entry No. 58), which is addressed in a separately entered Report and Recommendation.

3

to judgment as a matter of law." Thus, to prevail on a motion for summary judgment, the moving party must demonstrate that no genuine issue of material fact exists and that judgment as a matter of law should be granted in the moving party's favor. See Smith v. Hudson, 600 F.2d 60, 63 (6th Cir. 1979).

In considering a motion for summary judgment, the Court must view all facts and inferences to be drawn therefrom in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587-88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); Meyers v. Columbia/HCA Healthcare Corp., 341 F.3d 461, 466 (6th Cir. 2003); Hopson v. DaimlerChrysler Corp., 306 F.3d 427, 432 (6th Cir. 2002); Securities & Exch. Comm'n v. Blavin, 760 F.2d 706, 710 (6th Cir. 1985). Although the moving party has the burden of showing that no genuine issue of material fact exists, the non-moving party may not merely rest on conclusory allegations contained in the complaint, but must respond with specific evidence supporting its claim and establishing the existence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Hopson, 306 F.3d at 432; Cloverdale Equip. Co. v. Simon Aerials, Inc., 869 F.2d 934, 937 (6th Cir. 1989). A mere scintilla of evidence is insufficient; there must be evidence upon which the jury could reasonably find for the non-movant. Anderson v. Liberty Lobby, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Meyers, 341 F.3d at 466.

Not every factual dispute between the parties will prevent summary judgment. The disputed facts must be material. They must be facts which, under the substantive law governing the issue, might affect the outcome of the suit. Anderson, 477 U.S. at 248. The dispute must also be genuine. The facts must be such that, if they were proven at trial, a reasonable jury could return a verdict for the non-moving party. Id. The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence that makes it necessary to resolve the parties' differing versions of the dispute at trial. First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 288-89, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968).

III. HICKMAN COUNTY'S MOTION FOR SUMMARY JUDGMENT

A. Statute of Limitations

    1.    Applicability of Adverse Inference

Defendant Hickman County argues that the plaintiff is barred from asserting any claims for sexual assault between August 21, 2008 and August 27, 2008, by the one year statute of limitations. It is undisputed that a one year statute of limitations applies to the plaintiff's section 1983 claims. See Wallace v. Kato, 549 U.S. 384, 387, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007); Eidson v. State of Tenn. Dep't of Children's Servs., 510 F.3d 631, 634-35 (6th Cir. 2007); Roberson v. Tennessee, 399 F.3d 792 (6th Cir. 2005); Hughes v. Vanderbilt Univ., 215 F.3d 543, 547 (6th Cir. 2000); Merriweather v. City of Memphis, 107 F.3d 396, 398 (6th Cir. 1997); Berndt v. State of Tenn., 796 F.2d 879, 883 (6th Cir. 1986); T.C.A. § 28-3-104(a). This lawsuit was filed on August 21, 2009, and any claims of constitutional violations occurring after August 21, 2008, would not be barred.

However, defendant Hickman County contends that an adverse inference or rebuttable presumption should apply and bar the plaintiff from claiming that she was assaulted between August 21, 2008, and her release from jail. Thus, the defendant argues that, since the claims against the defendant arising before August 21, 2008, and after her release have already been dismissed, and if her claims for the time period between August 21, 2008, and August 27, 2008, are dismissed, all claims against defendant Hickman County should be dismissed.

In the order entered November 3, 2010, however, the Court found that the adverse inference should be confined to an inference that the plaintiff's journals, if they had been produced, would have been adverse to the plaintiff and favorable to defendant Hickman County. The motion should be denied to the extent that defendant Hickman County seeks to dismiss any claims for sexual assault between August 21, 2008, and August 27, 2008, on the basis of the adverse inference.

5

### 2. Incidents between August 21, 2008, and the Plaintiff's Release

Because the August 18, 2008, incident occurred more than a year before the lawsuit was filed and, because the defendant maintains that the only incident of physical sexual assault occurred on August 18, 2008, defendant Hickman County argues that all claims against it should be dismissed. In support, defendant Hickman County refers to the plaintiff's sworn statement to the FBI after her release to establish that the "one time that [Detective Smith] took me into his office that something happened physically[]" was on August 18, 2008. Docket Entry No. 49, at 13-16, and Docket Entry No. 49-1, at 45-46. Specifically, the plaintiff attested that:

> There was only one time that he took me into his office that something happened physically. . . . when Detective Smith picked me up and pushed me down onto his desk. He then pulled my pants and my panties down and began to fondle me and finger me. I was telling him to stop; it was so bad that he made me bleed.

Docket Entry No. 49-1, at 45-46.

In response, the plaintiff refers to her deposition testimony that "Well, physically, by him throwing me on the desk, yeah, that's physically. But it's not the only time he ever touched me." Docket Entry No. 49, at 116. Therefore, the plaintiff argues that she was making a distinction between a physical assault, which occurred on August 18, 2008, and sexual assault, one incidence of which occurred on August 26, 2008, within the statute of limitations.

The plaintiff's deposition testimony is anything but a model of clarity. The defendant is free to attack her testimony as inconsistent and lacking in credibility. However, it is not the Court's prerogative to assess the plaintiff's credibility in the context of this motion. It is not beyond the realm of comprehension that a plaintiff, who had suffered physical and sexual abuse at the hands of her jailer, might have difficulty remembering exact dates or details of such abuse, nor is it entirely illogical that the plaintiff might make a distinction between sexual touching and physical assault.

Based on the plaintiff's deposition testimony, the Court cannot unequivocally find that the only incidents of sexual assault occurred prior to August 21, 2008, and therefore the statute of limitations does not serve to bar any claim for sexual assault between August 21, 2008, and August 27, 2008.

B. Plaintiff's Constitutional Claims

In her original and amended complaints, the plaintiff asserted claims under both the Eighth and Fourteenth Amendments. Apparently as a result, the defendants and the Court assumed that the plaintiff was serving a term of incarceration in the Hickman County Jail until August 27, 2008, and thus her claims resulting from physical and/or sexual assaults and denial of medical care while incarcerated must be analyzed under the Eighth Amendment.[3] However, it appears that the plaintiff may actually have been a pretrial detainee. See Docket Entry No. 69, at 2-3 ¶ 3. In that event, the plaintiff would not be able to maintain any claims under the Eighth Amendment since the Fourteenth Amendment applies to pretrial detainees. See Bell v. Wolfish, 441 U.S. 520, 535-39, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); Spencer v. Bouchard, 449 F.3d 721, 727 (6th Cir. 2006). Regardless, whether or not the plaintiff was a convicted prisoner or a pretrial detainee is not critical because Eighth Amendment standards are used to determine whether the alleged conduct during the time the plaintiff was housed in the Hickman County Jail violates the Constitution. See Miller v. Calhoun Cnty., 408 F.3d 803, 812 (6th Cir. 2005); Barber v. City of Salem, Ohio, 953 F.2d 232, 235 (6th Cir. 1992); Danese v. Asman, 875 F.2d 1239, 1242-43 (6th Cir. 1989), cert. denied, 494 U.S. 1027, 110 S.Ct. 1473, 108 L.Ed.2d 610 (1990); Roberts v. City of Troy, 773 F.2d 720, 723 (6th Cir. 1985).

C. Deliberate Indifference to Training, Supervision or Maintaining a Safe Environment

Defendant Hickman County cannot be held liable on the basis of respondeat superior merely because its employee acted in violation of the plaintiff's constitutional rights. Doe v. Claiborne Cnty., Tenn., 103 F.3d 495, 507 (6th Cir. 1996); Street v. Corrections Corp. of Am., 102 F.3d 810, 817-18 (6th Cir. 1996); Taylor v. Michigan Dep't of Corr., 69 F.3d 76, 80-81 (6th Cir. 1995). The plaintiff must set forth facts upon which municipal liability can be found by showing that the constitutional injury was caused by an action taken pursuant to an official policy or custom of

---

[3] In the memorandum entered April 12, 2010, the Court analyzed the plaintiff's claims while housed at the Hickman County Jail under both the Eighth and Fourteenth Amendments. Docket Entry No. 34, at 3.

7

Hickman County. See Board of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown, 520 U.S. 397, 403, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997); Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 690-91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); Thomas v. City of Chattanooga, 398 F.3d 426, 429 (6th Cir.), cert. denied, 546 U.S. 814, 126 S.Ct. 338, 163 L.Ed.2d 50 (2005); Taylor, 69 F.3d at 80-81; Matthews v. Jones, 35 F.3d 1046, 1049 (6th Cir. 1994).

A municipality can be found liable under section 1983 only when a policy of the municipality itself causes the constitutional violation at issue by promulgating a policy, statement, regulation, decision or custom. Monell, 436 U.S. at 690-91; Matthews, 35 F.3d at 1049. As the Supreme Court held in Monell, "[i]t is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983." 436 U.S. at 694. In short, there must be a direct causal link between an official policy or custom and the alleged constitutional violation, and the policy of the governmental entity must be the "moving force" behind the constitutional violation. See City of Canton v. Harris, 489 U.S. 378, 389, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989) (quoting Monell, 436 U.S. at 694); Graham v. County of Washtenaw, 358 F.3d 377, 383 (6th Cir. 2004). Otherwise, a Section 1983 claim will not lie. Monell, 489 U.S. at 385; Doe v. Claiborne Cnty., 103 F.3d at 507-09.

The plaintiff does not maintain that there was an express official policy that was the moving force behind the constitutional violation, but rather asserts that the defendant's inaction by its failure to provide adequate training and supervision and to provide a safe environment amounted to a policy, practice or custom leading to the violation. Municipal liability can be based upon acts "performed pursuant to a 'custom' that has not been formally approved by an appropriate decision maker" if the "relevant practice is so widespread as to have the force of law." Board of Cnty. Comm'rs of Bryan Cnty., 520 U.S. at 404 (citing Monell, 436 U.S. at 690-91, and Adickes v. S.H. Kress & Co., 398 U.S. 144, 167-68, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)).

The Sixth Circuit has articulated the requirements for a municipal liability claim based on the theory that the defendant had a custom of tolerating constitutional violations that was unwritten but nevertheless entrenched through actual practice. The plaintiff must show:

(1) the existence of a clear and persistent pattern of the alleged unconstitutional conduct;

(2) notice or constructive notice on the part of the defendant;

(3) the defendant's tacit approval of the unconstitutional conduct, such that its deliberate indifference in its failure to act can be said to amount to an official policy of inaction; and

(4) that the defendant's custom was the "moving force" or direct causal link in the constitutional deprivation.

Doe v. Claiborne Cnty., 103 F.3d at 508; Thomas, 298 F.3d at 429.

As the Court found in the order entered April 12, 2010 (Docket Entry No. 34), in order to prevail on an "inaction" theory, the plaintiff must show a clear and persistent pattern of unconstitutional conduct and notice or constructive notice to the defendant of that pattern. See Weaver v. Tipton Cnty., Tenn., 41 F. Supp.2d 779, 789 (W.D. Tenn. 1999). As the Court explained:

> Plaintiff must demonstrate that the municipality's inaction reflected deliberate indifference, such that its failure to act reflects an official policy of inaction, and that this policy was the moving force behind the constitutional violation against her. If there is a pattern of illegal conduct, a court can infer that the municipality had notice of the conduct, and if the municipality takes no action, a court can find such inaction was deliberate. The evidence must show that the need to act is so obvious that the County's conscious decision not to act can be said to amount to a policy of deliberate indifference to Plaintiff's constitutional rights.

Docket Entry No. 34, at 4 (citations omitted).

For the purposes of the defendant's motion to dismiss, the Court found that, based on her allegations of having been repeatedly raped and/or sexually assaulted over a period of over seven months and the County's failure to properly supervise and train and to adopt a policy that would enable it to identify predator deputies, the plaintiff had sufficiently alleged a "clear and consistent pattern of serious and unconstitutional conduct by a Hickman County employee and, at a minimum, constructive notice of that pattern to the municipality [and] sufficiently alleged inaction which could

9

reflect deliberate indifference and which could be found to be moving force behind the constitutional violations against her." Id. at 5.

The plaintiff's burden in defending a motion for summary judgment is higher than her threshold burden when defending a motion to dismiss.

To prevail on a failure to train or supervise claim, the plaintiff must show that "(1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury." Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist., 455 F.3d 690, 700 (6th Cir. 2006). See also Ciminillo v. Streicher, 434 F.3d 461, 469 (6th Cir. 2006); Russo v. City of Cincinnati, 953 F.2d 1036, 1046 (6th Cir. 1992).

It is undisputed that defendant Smith attended a ten-week policy academy training in 2004. See Docket Entry No. 69, at 7, ¶ 34; Docket Entry No. 67, at 9. It is also undisputed that defendant Smith had at least 40 hours of P.O.S.T. training each year through 2008. Docket Entry No. 69, at 7, ¶ 35; Docket Entry No. 67, at 12-13.[4] There is nothing in the record, however, to reflect that part of such training included admonitions against sexually assaulting inmates.

Although it is not disputed that Hickman County had a Policy & Procedure Manual, defendant Smith testified that it was not "made" until "about the time" he was placed on administrative leave. Docket Entry No. 67, at 68-69. However, Randal Ward, Sheriff of Hickman County, attested that the Policy and Procedure Manual, dated December 1, 2007, portions of which were attached to his affidavit, was in effect when the plaintiff was in the Hickman County Jail. Docket Entry No. 55-2, at 1 and 4-16. The manual prohibits discrimination on the basis, inter alia, of sex, id. at 6, prohibits employees of the opposite sex of a prisoner from entering the cell or pod

---

[4] Although the plaintiff contends that defendant Smith received "no additional, on-the-job" training once he became employed by Hickman County, Docket Entry No. 68, at 9, he testified in his deposition that he was required to have 40 hours of training a year, and that he had received 40 hours of training through 2008. See Docket Entry No. 67, at 12-13; Docket Entry No. 69, at 7. Apparently, the plaintiff is making a distinction between "on-the-job" training and training conducted by another source.

alone, id. at 7, requires reporting to the jail administrator and sheriff, inter alia, any assault of a prisoner by a staff member and sexual assault, id at 12, requires that "[a]ll entry Correctional Officers [] read and familiarize themselves" with the manual,[5] attend at least 40 hours of basic training provided by the Tennessee Corrections Institute, and complete an annual 40 hours of in-service training, id. at 13, and that all searches of inmates be conducted by personnel of the same sex absent an emergency or the unavailability of a female correctional officer. Id. at 14. Inmate Staff Relations Policy Number C-200 restricts conversations between employees and inmates to matters necessary to the employee's duties and prohibits social relationships with inmates. Id. at 15-16.

The plaintiff has not, however, pointed to any training that was lacking, inadequate, or deficient, or any training that, had defendant Smith received it, would have served to deter him from sexually assaulting the plaintiff. Deliberate indifference is a "stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Board of Cnty. Comm'rs of Bryan Cnty., 520 U.S. at 410. See also Currie v. Haywood Cnty., 234 Fed.Appx. 369, 372-73 (6th Cir. 2007); Perez v. Oakland Cnty., 466 F.3d 416, 430-31 (6th Cir. 2006), cert. denied, 522 U.S. 823, 128 S.Ct. 166, 169 L.Ed.2d 33 (2007). The plaintiff has not shown that defendant Hickman County knew or should have known that its training was inadequate or that specific training was necessary to deter its employees from sexually assaulting inmates and deliberately chose not to institute such training. The plaintiff has not shown that any employees, other than defendant Smith, engaged in unconstitutional conduct. However, the plaintiff has not shown, by reliable, admissible evidence, a "clear and persistent pattern of unconstitutional conduct by municipal employees." The plaintiff contends that there is evidence in the record that defendant Hickman County was "tolerable to employee-inmate relationships." Docket Entry No. 68, at 10. Specifically, the plaintiff notes that defendant Smith testified that there was "scuttlebutt talk" that

---

[5] Since defendant Smith became employed by Hickman County in 2004, see Docket Entry No. 69, at 7, ¶ 34; Docket Entry No. 68, at 9, he would not have been provided the December 1, 2007, Policy and Procedure Manual as an entry employee.

11

Captain Wasden, who supervised the jail and the deputies,[6] was himself having a sexual relationship with an inmate. Docket Entry No. 68, at 10; Docket Entry No. 67, at 35-39. As defendant Hickman County contends, that statement is hearsay and cannot be considered.

The plaintiff also points to her testimony that, on the first occasion when defendant Smith assaulted the plaintiff, Captain Jerry Wasden opened the door to defendant Smith's office and said, "Oh, I'm sorry. I didn't know you was with your girlfriend," Docket Entry No. 68, at 10; Docket Entry No. 48, at 40. Although the plaintiff did not testify about what else Captain Wasden did or did not do, the plaintiff argues that he "[c]ompletely disregard[ed] or even question[ed] why Defendant Smith was in his office, with the door locked, after his shift was over, with a female inmate."

The plaintiff's allegations simply do not rise to the stringent level of proof required to show that defendant Hickman County acted with deliberate indifference in training or supervising defendant Smith or in maintaining a safe environment. There is no proof that Captain Wasden was a policy maker for defendant Hickman County or that any decision or policy maker for defendant Hickman County was aware of his comments. Neither does the plaintiff even assert that Captain Wasden saw any evidence of defendant Smith's having assaulted the plaintiff. While it may have been negligent for Captain Wasden not to have inquired or investigated further upon noticing the plaintiff and defendant Smith behind closed doors, such negligence does not support the deliberate indifference of defendant Hickman County. A single comment by Captain Wasden, while inappropriate,[7] provides barely a scintilla of evidence and is not sufficient to support a section 1983 claim for deliberate indifference by defendant Hickman County by failing to properly train,

---

[6] See Docket Entry No. 55-1.

[7] Captain Wasden apparently denies having made this statement, since he attested in his affidavit that he never heard any allegations about defendant's conduct toward the plaintiff and did not witness any such conduct that led him to believe that defendant Smith was acting inappropriately toward inmates. Docket Entry No. 55-1.

12

supervise or maintain a safe environment. The defendant must have "disregarded a known or obvious consequence of his action." See Board of Cnty. Comm'rs of Bryant Cnty., 520 U.S. at 410.

There is no proof, other than the plaintiff's allegation of Captain Wasden's comment addressed above, that anyone else at the jail or any other employee of defendant Hickman County was aware of any inappropriate conduct by defendant Smith. It is undisputed that the plaintiff never told anyone about her allegations against defendant Smith until after she was released, when she called Deputy Carl Hutcherson, who contacted Chief Deputy Bobby Underhill, who subsequently relayed the information to the FBI and TBI, and FBI and TBI agents contacted the plaintiff. Docket Entry No. 69, at 3-4, ¶¶ 14-19.

The plaintiff has not provided any proof that defendant Smith engaged in a pattern of sexually abusing inmates before or during the time the plaintiff was at the jail or any proof to support that defendant Hickman County should have been on either actual or constructive notice that defendant Smith had sexually abused the plaintiff.[8] The plaintiff has failed to provide a sufficient nexus between any failure to train or supervise and the asserted unconstitutional conduct.[9]

The plaintiff also appears to assert a claim against defendant Hickman County for failure to have a policy which could "identify deputies who possess the same personality traits as Smith and intercede to treat and correct those personality problems." Docket Entry No. 17, at 3, ¶ 4.2. The

---

[8] The Court takes judicial notice of the indictment issued on October 21, 2010, in United States of America v. Kenneth H. Smith, 1-10-00012, in which defendant Smith is charged in three counts of civil rights violations, one count of civil rights violation occurring on or about May 2008, for committing or attempting to commit aggravated sexual abuse on the plaintiff, and two counts of making false statements to the FBI. In the first two counts, defendant Smith is charged with photographing inmates' vaginas on or about October 17, 2008, and on or about December 5, 2008, and in the third count, defendant Smith is charged with photographing another inmate's buttocks in or about September of 2008. The parties have not addressed these charges and none of the alleged offenses involving other inmates occurred prior to the plaintiff's release.

[9] There is no dispute that, if defendant Smith sexually assaulted the plaintiff, his conduct was a constitutional violation of the plaintiff's civil rights. As the Court found in the memorandum entered April 12, 2010, "'no rational individual could believe that sexual abuse by a state actor is constitutionally permissible under the due Process Clause' and a citizen has a 'clearly established right under the substantive component of the Due Process Clause to personal security and to bodily integrity'" (citing Doe v. Magoffin Cnty. Fiscal Court, 2006 WL 959812, *4 (6th Cir. Apr. 13, 2006) (quoting Doe v. Claiborne County, Tenn., 103 F.3d at 507). Docket Entry No. 34, at 3.

extent to which that claim is separate from or part and parcel of the plaintiff's claim of failure to supervise is not clear. While the defendant did not address the plaintiff's claim for failure to identify personality traits separately from the claim for failure to supervise, the defendant did point out that defendant Smith received a psychological examination. Docket Entry No. 56, at 10. It is undisputed that defendant Hickman County sent defendant Smith to a licensed psychological examiner on April 14, 2004, who concluded that defendant Smith was "free of all apparent mental disorders . . . that would . . . impair [his] ability to perform any essential function of the job or would cause him to pose a direct threat to public safety . . . ." Docket Entry No. 69, at 7-8, ¶ 38; Docket Entry No. 55-2, at 20-21. The plaintiff has not pointed to any policy that could or should have been in place to identify deputies with personality traits and to intercede and correct those personality problems, or why the psychological examination was not sufficient. Nor has the plaintiff even proffered what personality traits defendant Smith had that should have caused defendant Hickman County to intercede or suggested what personality traits of defendant Smith resulted in the constitutional violations or how defendant Hickman County knew or should have known that it should have had a policy, beyond a requirement of psychological testing, to identify personality traits.

Although the plaintiff may be asserting a claim for failure to maintain a safe environment separate and apart from her claims of failure to train and supervise, the basis for such a separate claim is not clear, and it appears to the Court that any such a claim in this case would necessarily be intertwined with the claims for failure to train and supervise.

The plaintiff has failed to demonstrate that any failure to train, supervise, identify personality traits or maintain a safe environment was so obvious that Hickman County's "'conscious' decision not to act can be said to amount to a 'policy' of deliberate indifference to [the plaintiff's] constitutional rights," see Doe v. Claiborne Cnty., 103 F.3d at 508, and no reasonable jury could find that defendant Hickman County was deliberately indifferent in its failure to train, supervise, identify personality traits, or maintain a safe environment.

D.  Deliberate Indifference to Serious Medical Needs

As addressed above, assuming the plaintiff was a pretrial detainee, she has a constitutional right under the Fourteenth Amendment Due Process clause to the same protection afforded convicted prisoners who have serious medical needs.  Heflin v. Stewart Cnty., Tenn, 958 F.2d 709, 714 (6th Cir.), cert. denied, 506 U.S. 998, 113 S.Ct. 598, 121 L.Ed.2d 535 (1992); Roberts, 773 F.2d at 723.  It is well-settled that the analysis utilized in Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), for Eighth Amendment claims of convicted prisoners applies to pretrial detainees who assert the denial of adequate treatment for their medical needs.  Danese, 875 F.2d at 1239.  See also Horn v. Madison Cnty. Fiscal Court, 22 F.3d 653, 660 (6th Cir. 1994), cert. denied, 513 U.S. 873, 115 S.Ct. 199, 130 L.Ed.2d 130 (1994).

The plaintiff claims that defendant Hickman County was deliberately indifferent to her serious medical needs by failing to provide her prompt physical and psychological medical attention while she was incarcerated in the jail.  The government has a constitutional obligation to provide medical care for the individuals it incarcerates, and "deliberate indifference to the serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment."  Estelle,  429 U.S. at 103.

An Eighth Amendment claim for deliberate indifference to serious medical needs has both a subjective and an objective component.  Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); Comstock v. McCrary, 273 F.3d 693, 702 (6th Cir. 2001), cert. denied, 537 U.S. 817, 123 S.Ct. 86, 154 L.Ed.2d 22 (2002).  The first component is an objective one that requires the plaintiff to prove that her medical condition was sufficiently serious.  Comstock, 273 F.2d at 703.  A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.  Blackmore v. Kalamazoo Cnty., 390 F.3d 890, 897 (6th Cir. 2004).

The second element is a subjective component that requires a showing that prison officials acted with a sufficiently culpable state of mind, i.e., deliberate indifference to the plaintiff's serious

15

medical need. Farmer, 511 U.S. at 834. Although this standard does not require a showing that the defendant acted with a purpose or intent to inflict harm, the standard is not satisfied by a showing of negligence. See Estelle, 429 U.S. at 105 ("inadvertent failure to provide adequate medical care cannot be said to constitute" a violation of the Eighth Amendment); Comstock, 273 F.3d at 703 ("[w]hen a prison doctor provides treatment, albeit carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation"). See also Johnson v. Karnes, 398 F.3d 868, 875 (6th Cir. 2005).

The plaintiff must show more than medical malpractice and negligence on the part of the defendant because the subjective requirement acts "to prevent the constitutionalization of medical malpractice claims." Johnson, 398 F.3d at 875 (quoting comstock, 273 F.3d at 703). See also Estelle, 429 U.S. at 106; Walker v. Norris, 917 F.2d 1449, 1454 (6th Cir. 1990); Roberts, 773 F.2d at 724. Rather, the plaintiff must demonstrate "deliberateness tantamount to intent to punish." Horn, 22 F.3d at 660 (citation omitted). As the Supreme Court found in Whitley v. Alberts, 475 U.S. 312, 319, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986), "[t]o be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety. . . . It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause . . . ."

Defendant Hickman County recounts the plaintiff's nine requests[10] for medical attention during her seven months in jail, and the medical care she received in response to each request. See Docket Entry No. 56, at 15-16.[11] The plaintiff does not dispute that there were serious medical needs that "were attended to at various times through out (sic) her incarceration." Docket Entry No.

---

[10] The plaintiff disputes that she only made nine requests because there were occasions when the requests were written on notebook paper because no formal request forms were available. See Docket Entry No. 69, at 6, ¶ 29, and at 10, ¶ 47.

[11] The defendant cites July 9, 2010, and July 10, 2010, as dates on which the plaintiff received treatment or made a request. Docket Entry No. 56, at 15. Clearly, the defendant intended to refer to July 9, 2008, and July 10, 2008, rather than 2010.

16

68, at 11. It is undisputed that during her time at the jail, she was taken to the Hickman County Community Hospital on three separate occasions, seen by the jail nurse on several occasions, sent to a gynecologist outside the jail on two occasions, and provided "multiple different medications." Docket Entry No. 69, at 6, ¶¶ 30-31. However, the plaintiff claims that, based on her "increasing demand for medical treatment during the month of July 2008, Hickman County correctional officials knew of the increasing severity of the Plaintiff's condition yet on two (2) separate occasions, treatment and/or medical attention was unreasonably delayed and not rendered for eleven (11) days," and Dr. Pelletier wrote the plaintiff two prescriptions on August 7, 2008, without actually examining her. Docket Entry No. 68, at 12.

It is undisputed that on June 28, 2008, the plaintiff submitted a request for medical attention, alleging that she had "an ovarian cyst bust." Docket Entry No. 69, at 12, ¶ 57. However, according to the plaintiff, she received no treatment as a result until she was sent to the Hickman County Community Hospital Emergency Room on July 9, 2008, where she was found to have a "yellowish vaginal discharge" but no bleeding, and a pelvic ultrasound revealed a left ovary mass but no abnormality that would explain her pain. Id. at 12-13, ¶ 59.

On July 10, 2010, the plaintiff requested medical attention because of "sharp pain in her side" and she was again sent to the emergency room, where a CT scan was performed, and she was diagnosed with a dermoid growth on her left ovary, and was prescribed pain medication. Id. at 13, ¶¶ 60-61. On July 19, 2008, the plaintiff requested medical attention because of stomach pain and "female discharge," and was sent to a gynecologist outside the jail on July 21, 2008. Id. at 13, ¶¶ 62-63. On July 27, 2008, the plaintiff requested medical attention because of pain and because her medication "was not working," and again on July 30, 2008, because of pain. An appointment with a gynecologist outside the jail was made on August 7, 2008, and she was prescribed two medications. Id. at 13-14, ¶¶ 64-67. On August 17, 2008, the plaintiff was examined by Dawn James, a nurse practitioner with the Hickman County Community Hospital, who gave her an

17

injection, but noted that she did not see any staining or drainage and that the plaintiff did not appear to be in any pain. Id. at 14-15, ¶¶ 68-75.[12]

The plaintiff does not allege that she told anyone at the jail or any medical professional that any of her medical problems were the result of sexual assault while at the jail. Nor has she claimed that she has suffered any ill effects from the inadequate or delayed medical treatment after she was released from jail.

While it is not clear to the Court that the plaintiff has shown that she meets the first objective prong that she suffered from a serious medical need, the Court will assume, for the purposes of this motion, that she has done so. On the other hand, the Court finds that the plaintiff has failed to establish the second prong in establishing deliberate indifference to a serious medical need. The plaintiff was provided medical care while in the jail and was taken to outside doctors and an outside hospital on several occasions. Although there was a delay of 11 days between her complaint of an "ovarian cyst bust" and her treatment at the Hickman Community Hospital, such delay does not rise to the level of deliberate indifference to her serious medical needs.

When an inmate has received some medical attention and the dispute is over the adequacy of the care, the federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that would otherwise sound in state tort law. Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976). This is especially true when the undisputed facts show that a regular course of medical care was provided to the plaintiff and there is no evidence that such care was woefully inadequate based on the plaintiff's presentation of her medical needs. See Thomas v. Coble, 55 Fed.Appx. 748, 749 (6th Cir. Feb. 11, 2003). Further, the Eighth Amendment does not guarantee a prison inmate the "optimum" or "best" medical treatment. McMahon v. Beard, 583 F.2d 172, 174 (5th Cir. 1978).

---

[12] According to Nurse James, the plaintiff appeared to be more concerned about being able to smoke a cigarette than with being in pain. Docket Entry No. 69, at 15, ¶¶ 72-75; Docket Entry No. 55-4, at 8.

The mere malpractice of medicine in a prison setting through negligent acts does not amount to an Eighth Amendment violation. See Estelle, 429 U.S. at 107; Walter v. Norris, 917 F.2d 1449, 1454 (6th Cir. 1990); Roberts, 773 F.2d at 724. Accordingly, a constitutional claim is not shown by a delay in treatment based on a bad diagnosis or erroneous calculus of risks and costs, or a mistaken decision not to treat based on an erroneous view that the condition is benign or trivial. See Harrison v. Barkley, 219 F.3d 132, 139 (2nd Cir. 2000).

In the absence of proof of an urgent medical need that required immediate treatment, the delays about which the plaintiff complains simply fail to rise to the level of constitutional concern. See, e.g., Cuco v. Federal Med. Ctr-Lexington, 2006 WL 1635668 (E.D. Ky. June 9, 2006), remanded on technical ground but otherwise aff'd, 257 Fed.Appx. 897 (6th Cir. Dec. 13, 2007) (several month delay in providing diagnostic testing and surgery did not show deliberate indifference in Bivens action); Canady v. Wilkinson, 90 Fed.Appx. 863 (6th Cir. Feb. 2, 2004) (three month delay in eye surgery was not deliberately indifferent); Reid v. Sapp, 84 Fed.Appx. 550, (6th Cir. Dec. 5, 2003) (approving physician's denial of surgery that had been recommended by an outside specialist was not deliberately indifferent); Slone v. O'Dea, 1997 WL 68218 (6th Cir. Feb. 18, 1997) (failure to follow physician's recommendation for surgery not deliberately indifferent); Marshbanks v. Lewis, 1994 WL 249999 (9th Cir. June 9, 1994) (eight month delay in removing benign lump not deliberately indifferent).

The high threshold of proof required by Estelle and Farmer and the well-settled principle that negligence will not support an Eighth Amendment claim lead to the conclusion that an inmate can succeed on a constitutional claim challenging the quality of her health care only when she sets forth facts showing egregious and deliberately indifferent acts on the part of the defendant. Merely showing that better, more prompt, or more emphatic alternatives might have been available fails to satisfy the requirements for a constitutional claim. No reasonable jury could find that the plaintiff in this case was treated with deliberate indifference with respect to her medical needs.

## IV.  RECOMMENDATION

For the above-stated reasons, it is recommended that the motion of defendant Hickman County for summary judgment (Docket Entry No. 55) be GRANTED, and that all claims brought by the plaintiff against defendant Hickman County be DISMISSED.

Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice, and must state with particularity the specific portions of this Report & Recommendation to which objection is made.  Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's order.  See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

Respectfully Submitted,

_____
JULIET GRIFFIN
United States Magistrate Judge